**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DENA CHARYNE THOMPSON,

                        Petitioner,

                                           CIVIL NO. 2:11-CV-12709

v.                                      HONORABLE SEAN F. COX

                                         UNITED STATES DISTRICT COURT

MILLICENT WARREN,

                        Respondent.

_____/


## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

      Dena Charyne Thompson, ("Petitioner"), presently incarcerated at the Huron Valley Women's Complex in Ypsilanti, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In her application, filed by attorney David A. Dodge, petitioner challenges her conviction for first-degree premeditated murder, Mich. Comp. Laws, § 750.316(c), conspiracy to commit first-degree murder, Mich. Comp. Laws, § 750.157a, and accessory after the fact to a felony, Mich. Comp. Laws, § 750.505. For the reasons stated below, the petition for writ of habeas corpus is **DENIED WITH PREJUDICE.**

### I. Background

      Petitioner was convicted of the above offenses following a jury trial in the Allegan County Circuit Court.

      Petitioner's counsel has provided a detailed statement of facts in his memorandum in support

1

of the petition for writ of habeas corpus. [1]  Respondent has likewise provided a lengthy, detailed factual summary of the case, which does not essentially conflict with petitioner's statement of facts, but at most adds additional details. [2]  The Court will therefore accept the factual allegations contained within the habeas petition insofar as they are consistent with the record, because the respondent has not disputed them. *See Cristini v. McKee,* 526 F. 3d 888, 894, n. 1 (6th Cir. 2008)("When a state's return to a habeas corpus petition fails to dispute the factual allegations contained within the habeas petition, it essentially admits these allegations").  Because the facts of this case have been repeated numerous times, they need not be repeated here in their entirety.  Therefore, only a brief overview of the facts is required. *See Nevers v. Killinger,* 990 F. Supp. 844, 847 (E.D. Mich. 1997).

Petitioner and her husband, Kristofer Thompson, conspired to murder petitioner's ex-husband Troy Tyo.  Petitioner and Tyo had been engaged in a bitter custody dispute involving their two children.  The original plan had been for Kristofer Thompson to use a baseball bat to murder the victim, but he instead ended up using a knife to stab the victim at least twenty three times.  After killing the victim, Kristofer Thompson attempted to cover up the crime by placing the victim's body in the victim's truck and setting it on fire.  Kristofer Thompson enlisted the help of his sister, Lori Lathrop, and his brother-in-law, Scott Lathrop, with the killing.

Petitioner and her husband were first interviewed by the police the day after the victim went missing.  Petitioner and her husband drove separately to the station.  Neither Petitioner nor her husband made any incriminating statements and were not arrested at that time.

---

[1]  *See* Memorandum in Support of Petition for Writ of Habeas Corpus, pp. 6-33 [This Court's Dkt Entry # 3].

[2]  *See* Respondent's Answer to Petition for Writ of Habeas Corpus, pp. 3-40 [This Court's Dkt Entry # 6].

The victim's body was found inside of his pick up truck on December 8, 2007, about five days after the victim had gone missing. About that same time, the police received information from Lori Lathrop that her brother Kristofer had killed Troy Tyo. Police obtained a search warrant for Petitioner's home and arrested Kristofer Thompson.

Petitioner was detained by the Allegan County Sheriff's Department and was interrogated by the police four times for a total of 9 ½ hours over a three day period, starting on December 8, 2007, and ending on December 10, 2007. Petitioner was advised of her *Miranda* rights before each interview. All of the interrogations were videotaped. Petitioner gave several inconsistent statements to the police, in which she denied involvement in the victim's murder. However, during the final interrogation on December 10, 2007, Petitioner admitted that she had asked Kristofer Thompson to kill her ex-husband and admitted that she had wanted her ex-husband "gone for good" and "out of the picture."

Prior to trial, Petitioner moved to suppress her statements on the grounds that they were involuntary. Petitioner also wished to call, both at the suppression hearing and at trial, an expert witness on false or coerced confessions, Dr. Richard Ofshe. The prosecution opposed Petitioner's request to allow Dr. Ofshe to testify as an expert witness.

An evidentiary hearing was conducted on the motion to suppress on April 14 and 24, 2008. Neither Petitioner nor the three detectives who interrogated Petitioner were called to testify at this hearing. Instead, Dr. Ofshe was called by the defense to testify at the hearing. Dr. Ofshe had reviewed the videotapes of the interrogations and concluded that the police had used psychologically coercive techniques to obtain a confession. Dr. Ofshe claimed that the police had used a psychologically coercive technique which may have motivated Petitioner to confess because if she

3

agreed with the police, she would be rewarded, but if she denied her involvement in the murder, it would cause her to face a severe consequence.  Dr. Ofshe also testified that the police used the tactic of advising Petitioner to think about her daughters in order to coerce a confession from her.  Dr. Ofshe further noted that the police used what he referred to as an "evidence ploy," in which they told Petitioner about evidence that linked her to the crime.  Dr. Ofshe indicated that the police had told Petitioner that they had evidence linking her to the crime which did not exist.  Dr. Ofshe admitted that he had not met Petitioner and did not know if she was vulnerable to being psychologically coerced by the police, nor had he compared her confessions with the known facts of the case or reviewed the police reports to determine the reliability of Petitioner's confession.  The trial judge refused to allow Dr. Ofshe to be qualified as an expert witness at the suppression hearing.

The trial judge denied the motion to suppress the confession, finding it to be voluntarily made:

> In regard to the argument of the use of the [Petitioner's] children to overbear the will of the defendant, I really find it difficult to reconcile with my review of the-of all the material that's been presented to me.  I find it to be at odds with what actually did occur.  I do not see any indication that there was an overbearing of the will in any manner.  It does seem that the defendant was essentially playing a chess game throughout this procedure.  It did not appear that she had any compunction about the manner in which she was being interrogated.  She continued to utilize her – I don't know if you'd call it intuition or what it is she was attempting to do to entice the assistance or understanding of the detectives, in any event I do not see that her will was in any way over born[e]. . . . Certainly she was well aware of her Miranda rights, she was certainly an individual of sufficient age.  Even considering the aspect of experience with the police, she had – she played these interviews out quite an extended period of time.  You indicate that you consider that these should be looked at upon the totality of the circumstances but under the totality of the circumstances we have to remember that she was given frequent breaks, she was given at least the opportunity for sleep and food. . . .

> [A] very complete record shows that this was a fully voluntary and knowingly [made] statement.

4

(Tr. 4/24/2008, pp. 28-29).

The trial judge subsequently granted the prosecutor's request to exclude Dr. Ofshe from testifying as an expert witness at trial either about false confessions or coercive police tactics. The trial judge noted that several courts in other states had precluded Dr. Ofshe from testifying about false confessions. *People v. Thompson,* No. 08-15612-FC, at pp. 6-7 (Allegan County Circuit Court, April 28, 2008)(collecting cases). The judge further observed that as recently as 2007, in jurisdictions that employed the *Daubert* standard [3] for the admissibility of expert testimony, the false confession theory was not held to be scientifically reliable. *Id.,* at p. 9. The judge mentioned that Dr. Ofshe had only published three articles in this decade and only one or perhaps two of those articles were related to false confessions. Although Dr. Ofshe had given presentations on the theory of false confessions, these had been mostly to defense attorneys, as opposed to colleagues who could critique his ideas and the techniques that he used to gather data. *Id.* Although Dr. Ofshe had written articles that had been subject to peer review, the reviews had been critical, which the judge felt demonstrated the unreliability of this theory. *Id.* The judge concluded that the theory on false confessions had not attained an acceptable level of reliability and thus excluded Dr. Ofshe from testifying on this subject. *Id.,* pp. 9-10. The judge further concluded that Dr. Ofshe's expert testimony should be excluded because whether a confession was coerced was within the general knowledge, experience, and common sense of jurors and Dr. Ofshe's testimony would not aid the jury, but might have the likelihood of misleading and confusing the jury. *Id.* at pp. 10-13.

At trial, the videotapes of all four of Petitioner's interviews with the police were played in their entirety for the jury. (Tr. Vol. III, pp. 22-285; Tr. IV, pp. 39-176, 193-219, 253-285). Defense

---

[3] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

counsel questioned the three detectives extensively concerning the interrogations of Petitioner and the tactics that they used.  In particular, Petitioner's counsel obtained admissions from the three different detectives that they falsely informed Petitioner that Kristofer Thompson had confessed to the murder and had implicated Petitioner, had erroneously told Petitioner that Kristofer Thompson had used a bat to kill the victim when he had in fact used a knife, and gave Petitioner the false impression that being an accessory after the fact to the crime would make her guilty of being involved in the murder, even though this was untrue.  Detective Haverdink in particular admitted giving Petitioner misleading information on Michigan law when he informed her that she would be guilty of aiding and abetting in the victim's murder if she simply knew that Kristofer Thompson was going to kill him. (Tr. III, pp. 286-97; Tr. IV, pp. 38-39, 181-83).  Counsel also obtained an admission from Detective Haverdink that at times during the interviews, Petitioner asked the police essentially "what do you want me to tell you?" (Tr. IV, p. 38).  Detective O'Reilly, the detective whom Petitioner ultimately confessed to, admitted knowing that petitioner had already gone through 9-10 hours of interrogations over two days before he questioned her.  Detective O'Reilly admitted that Petitioner has been asked by the other police whether she wanted to see her daughters again. He further acknowledged that suspects can be offered incentives that would make their confessions unreliable.  Detective O'Reilly admitted that a police officer's words can be adopted by a suspect. (*Id.,* pp. 293-95).  Finally, Detective O'Reilly admitted that it was possible that after 8-10 hours of interrogation, an officer could offer a suspect enough of an incentive to lie. (*Id.,* p. 299).

During closing argument, counsel extensively challenged the reliability and credibility of Petitioner's confession and played selected portions of the videotaped interrogations to the jurors. (Tr. V, pp. 88-96).

6

Petitioner was convicted of the charges by the jury. Petitioner's conviction was affirmed on appeal. *People v. Thompson,* No. 286849 (Mich.Ct.App. January 26, 2010); *lv. den.* 486 Mich. 1047; 783 N.W. 2d 361 (2010).

Petitioner seeks a writ of habeas corpus on the following grounds:

I.      The state court deprived her of a right to present a defense when it determined that her expert's testimony was inadmissible.

II.     The state courts wrongly decided that her confession was involuntary.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court

7

decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) ((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is

8

a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979)) (Stevens, J., concurring in judgment)).  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.  Finally, in reviewing Petitioner's claims, this Court must remember that under the federal constitution, Petitioner was "entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

### III.  Discussion

**A.  Claim # 1.  The right to present a defense claim.**

Petitioner first alleges that her right to present a defense was infringed when the trial judge refused to allow Dr. Ofshe to testify at Petitioner's trial as an expert witness on the issue of psychologically coercive interrogation techniques.

The Michigan Court of Appeals rejected Petitioner's claim, finding that the trial judge properly excluded Dr. Ofshe from testifying as an expert witness pursuant to M.R.E. 702, because there was nothing from the record to suggest that the jurors would not understand the evidence from the videotaped interrogation recording or that they would be unable to properly determine the weight and credibility to be given to Petitioner's statements. *Thompson,* Slip. Op. at p. 2. Moreover, although Dr. Ofshe had indicated that he would not offer an opinion that Petitioner was actually coerced into confessing, the Michigan Court of Appeals concluded that "implicit in his

9

proposed testimony was the conclusion that defendant's statements were in fact coerced or false."
Because this was an issue that was for the jury to determine, the Michigan Court of Appeals
concluded that the judge did not err in determining that Dr. Ofshe's proposed testimony was
unnecessary. *Id.* The Michigan Court of Appeals further held that the exclusion of Dr. Ofshe from
offering expert testimony on coercive interrogation techniques did not deprive Petitioner of her
right to present a defense, because she was able to present evidence that her confession was
unreliable through cross-examination of the detectives regarding their interrogation techniques and
through the presentation of evidence. *Id.,* at p. 3.

A state trial court's decision to exclude expert testimony is an exercise of judicial discretion.
*See Buell v. Mitchell,* 274 F. 3d 337, 357 (6th Cir. 2001). Moreover, habeas review does not
ordinarily extend to state court rulings on the admissibility of evidence. *Id.* To the extent that
petitioner is claiming an error of state law, she would not be entitled to habeas relief on this claim.
*Id.*

Petitioner, however, further claims that the trial judge's decision to preclude Dr. Ofshe from
testifying as an expert witness on false confessions or coercive interrogation techniques deprived
her of the right to present a defense.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of
challenging their testimony, he also has the right to present his own witnesses to establish a
defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388
U.S. 14, 19 (1967); *see also Crane v. Kentucky,* 476 U.S. 683, 690 (1986) ("whether rooted directly
in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or
Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants

'a meaningful opportunity to present a complete defense'") (internal citations omitted).  However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996).  The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689.  The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)).  Finally, rules that exclude evidence from criminal trials do not violate the right to present a defense unless they are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

Moreover, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect.  Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F. 3d 507, 511-12 (6th Cir. 2003).

Petitioner is not entitled to relief on her claim because the Michigan Court of Appeals reasonably determined that Petitioner was not deprived of her right to present a defense by the exclusion of Dr. Ofshe's proposed expert testimony concerning false confessions or coercive police interrogation techniques.  In *Brown v. Horell*, 644 F. 3d 969, 982-83 (9th Cir. 2011), the Ninth Circuit held that the state court's exclusion of Dr. Ofshe from testifying as an expert witness

11

regarding the interrogation methods used by the police to obtain the petitioner's confession was not contrary to or an unreasonable application of clearly established Supreme Court precedent, so as to entitle the petitioner to habeas relief.   In so ruling, the Ninth Circuit noted that the Supreme Court had never squarely addressed whether a state trial court's exercise of its discretion to exclude expert testimony violated a criminal defendant's constitutional right to present relevant evidence, nor had any Supreme Court cases clearly established "a controlling legal standard" for evaluating a trial court's discretionary decisions to exclude expert testimony. *Id.,* at 983 (quoting *Moses v. Payne*, 555 F.3d 742, 758-59 (9th Cir. 2009)).

Other courts have denied habeas relief to habeas petitioners who claimed that their right to present a defense was violated when they were not permitted to call an expert witness to testify about false confessions or coercive interrogation methods. *See Heiden v. Trujillo,* 174 Fed.Appx. 412, 415 (9th Cir. 2006)(state court's determination that trial court did not violate petitioner's due process rights by excluding expert testimony bearing on his confession was not contrary to, nor an unreasonable application of clearly established federal law, and thus did not warrant federal habeas relief, where trial judge enunciated several reasons to doubt reliability of expert's testimony, including that expert was not present during confession, had not viewed available videotape of confession, and had never directly spoken to participants)*; Loza v. Mitchell*, 705 F. Supp. 2d 773, 787-91 (S.D. Ohio 2010)(exclusion of clinical psychologist's testimony regarding the credibility and reliability of defendant's confession to murders did not violate petitioner's Fifth, Sixth, Eighth, or Fourteenth Amendment rights, where the jury had the opportunity to view a videorecording of the entire interview which culminated in the confession); *Ritt v. Dingle*, 142 F. Supp. 2d 1142, 1145 (D. Minn. 2001)(state court's exclusion in murder trial of expert testimony concerning police

12

detective's interrogation technique was not contrary to or unreasonable application of clearly established federal law, where petitioner was allowed to present jury videotape of her interrogation by detective, which showed circumstances of her confession).

Moreover, a number of federal courts on direct review of federal criminal convictions have likewise excluded expert testimony concerning false or coerced confessions on various grounds. *See U.S. v. Antone,* 412 Fed. Appx. 10, 11 (9th Cir. 2011) (district court's decision to exclude defense expert's testimony regarding false confessions because of danger that it would usurp jury's function of resolving relative credibility of witnesses was squarely within its discretion); *U.S. v. Benally,* 541 F.3d 990, 994-95 (10th Cir. 2008) (prejudicial effect of expert testimony on false confessions substantially outweighed its probative value; expert testimony would inevitably encroach upon jury's exclusive function to make credibility determinations, and relevance of testimony was minimal since expert did not examine defendant and was not going to discuss him or circumstances surrounding his confession); *U.S. v. Dixon,* 261 Fed. Appx. 800, 804-05 (5th Cir. 2008) (district court did not abuse its discretion in excluding defense expert's proffered testimony generally concerning phenomenon of false confessions; witness had not examined defendant and was not prepared to opine on whether his confessions were false); *U.S. v. Mamah,* 332 F. 3d 475, 478 (7th Cir. 2003) (proposed testimony by Dr. Ofshe that defendant likely gave a false confession, was based on insufficient facts or data to be admissible as expert testimony in drug prosecution, where Dr. Ofshe's proposed testimony, that false confessions could occur, was not connected to particulars of defendant's case); *see also U.S. v. Jacques,* 784 F. Supp. 2d 59, 63 (D. Mass. 2011) (expert witness's proffered testimony that defendant's confession was unreliable amounted to an improper opinion that defendant was not guilty, requiring its exclusion).

13

The Court is aware that two federal appeals courts reversed district court decisions to exclude expert testimony regarding a defendant's susceptibility to give a false confession. *See United States v. Hall*, 93 F. 3d 1337 (7th Cir.1996); *United States v. Shay*, 57 F.3d 126 (1st Cir. 1995). Other appellate courts have noted, however, that in these cases the expert witness was prepared to testify that the defendants had a specific mental or psychological condition that made them susceptible to making a false confession. *Benally,* 541 F. 3d at 996; *Dixon,* 261 Fed. Appx. at 805, n. 4. Likewise, in *United States v. Belyea,* 159 Fed. Appx. 525, 529-30 (4th Cir. 2005), the Fourth Circuit remanded a case to a district court because the district court had failed to conduct a particularized *Daubert* inquiry with regards to the admission of expert testimony on false confessions. This case would also not assist petitioner "because it was decided principally on the basis of the district court's inadequate review of the expert's proffer." *Benally,* 541 F. 3d at 996.

In any event, the three cited cases above involve direct appeals from federal criminal convictions. A habeas court may only look at the holdings of the United States Supreme Court as they existed at the time of the relevant state court decision to determine whether the state court decision was contrary to, or an unreasonable application of, clearly established federal law. *Mitzel v. Tate,* 267 F. 3d 524, 530-531 (6th Cir. 2001). A habeas court cannot look to the decisions of this circuit, or other courts of appeals, when deciding whether a state court's decision was contrary to, or an unreasonable application of, clearly established federal law. *Id.*

In the present case, Petitioner is not entitled to habeas relief on his first claim because there is no clearly established Supreme Court law which holds that a criminal defendant is entitled to present expert testimony on the issue of false or coerced confessions. Given the lack of holdings by the Supreme Court on the issue of whether a criminal defendant is entitled to present expert

14

testimony on the issue of false confessions or coercive police interrogation tactics, the Michigan Court of Appeals' rejection of Petitioner's claim was not an unreasonable application of clearly established federal law. *See Wright v. Van Patten,* 552 U.S. 120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 ( 2006).  Moreover, because numerous federal courts on both direct review of federal criminal convictions and on habeas review of state court convictions have ruled that a criminal defendant's rights were not violated by the exclusion of such expert testimony, Petitioner is not entitled to habeas relief because the cases cited above clearly show that "fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court's precedents. *Harrington,* 131 S. Ct. at 786.  Moreover, in light of the fact that Dr. Ofshe had never personally interviewed Petitioner or reviewed the police reports in this case and did not know whether Petitioner was personally vulnerable to coercive police techniques, the trial court's decision to exclude Dr. Ofshe's expert testimony was reasonable.  Finally, in light of the fact that the jurors were able to watch the videotaped interrogations in their entirety and Petitioner's counsel was able to cross-examine the detectives who conducted the interrogations, Petitioner was able to present her defense to the jury that her confession was unreliable.  Petitioner is not entitled to habeas relief on her first claim.

### B.  Claim # 2.  The coerced confession claim.

In her second claim, Petitioner contends that the trial judge erred in failing to suppress her confession on the grounds, in spite of testimony from Dr. Ofshe that the confession had been obtained by psychological coercion.

The Michigan Court of Appeals rejected petitioner's claim:

Defendant complains that the trial court abused its discretion when it relied on MRE 702, to determine whether Dr. Ofshe's testimony would not be helpful to the trier

of fact because MRE 104(a) and 1101(b)(1) make it clear that the Rules of Evidence do not apply to the voluntariness hearing. We agree the rules of evidence, including MRE 702, do not apply during a *Walker* hearing. [4] MRE 104(a); MRE 1101(b)(1). *People v. Richardson*, 204 Mich.App. 71, 80, 514 N.W.2d 503 (1994). Nevertheless, the trial court was entitled to determine the amount of weight to afford the expert witness' testimony when making its findings regarding the voluntariness of defendant's statement. *People v. Sexton* (After Remand), 461 Mich. 746, 752, 609 N.W.2d 822 (2000). In its written opinion, the trial court noted that Dr. Ofshe's testimony was not helpful to determine if defendant's statement was voluntary. Thus, the trial court did not fail to consider the evidence, but rather decided not to afford any weight to that testimony. And this Court will not second-guess the trial court's determinations concerning the weight and credibility of witness testimony. *Id.*

Additionally, after a thorough review of the record, we agree with the trial court's determination that defendant's admissions were voluntary. The record indicated that defendant was 38–years–old, was of at least average intelligence, but had little to no interaction with police before the week of the victim's death. The four interrogations lasted approximately 9–1/2 hours over three days and defendant repeatedly changed her statements and slowly admitted to her involvement throughout the course of the interrogations. She was repeatedly advised of her *Miranda* [5] rights, and there is no evidence of a delay in bringing her before the magistrate. Further, no evidence existed to support that defendant was injured, intoxicated, drugged or in ill health when she made her incriminating admissions, and she was repeatedly offered water and at least one bathroom break. Defendant never indicated that she was hungry or deprived of food or sleep, and there is no indication that defendant was physically abused or threatened with abuse. In sum, there was no basis for finding that her statements were involuntary under [*People v.*] *Cipriano* [431 Mich. 315; 429 N.W.2d 781(1988)].

*Thompson,* Slip. Op. at p. 4.

A defendant's waiver of his *Miranda* rights is considered valid if it is voluntary, knowing, and intelligent. *Miranda v. Arizona*, 384 U.S. 436, 444, 475 (1966). Coercive police activity is a necessary predicate to finding that a defendant's waiver of his *Miranda* rights was involuntary.

---

[4] *People v. Walker* (On Rehearing), 374 Mich. 331, 337–338, 132 N.W.2d 87 (1965)(footnote original).

[5] *Miranda v. Arizona,* 384 U.S. 436; 86 S. Ct. 1602; 16 L. Ed 2d 694 (1966)(footnote original).

*Colorado v. Connelly,* 479 U.S. 157, 167, 169-70 (1986). A defendant's deficient mental condition, by itself, is insufficient to render a waiver involuntary. *Id.* at 164-65. "[W]hile mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry." *Connelly*, 479 U.S. at 165.

Likewise, in determining whether a confession is voluntary, the ultimate question for a court is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton,* 474 U.S. 104, 112 (1985). These circumstances include:

1. police coercion (a "crucial element");
2. the length of interrogation;
3. the location of interrogation;
4. the continuity of the interrogation;
5. the suspect's maturity;
6. the suspect's education;
7. the suspect's physical condition and mental health;
8. and whether the suspect was advised of his or her *Miranda* Rights.

*Withrow v. Williams*, 507 U.S. 680, 693-94 (1993).

All of the factors involved in the giving of the statement should be closely scrutinized. *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). However, without coercive police activity, a confession should not be deemed involuntary. *Colorado v. Connelly,* 479 U.S. at 167.

Based upon the totality of the circumstances in this case, it was objectively reasonable for the Michigan Court of Appeals to hold that Petitioner's confession was voluntary. *See McCalvin v. Yukins,* 444 F. 3d 713, 720 (6th Cir. 2006). There is no allegation that Petitioner was physically assaulted or threatened with bodily harm if she did not confess. Although the interrogations lasted a total of 9 ½ hours, they were spread out over three days. Petitioner was returned to a jail cell between interrogations. There are no allegations, nor evidence to establish, that Petitioner did not

17

sleep, that she was not given food or drink, or that she was not provided with opportunities to use the restroom. The record reflects that Petitioner was advised of her *Miranda* rights before each interrogation. Moreover, Petitioner asked to speak to the police twice, when she asked to speak to Detective Haverdink on December 9, 2007 and again on December 10, 2007. The fact that Petitioner asked to speak to the detective not once but twice mitigates against a finding of coercion.

Petitioner, however, claims that she was coerced into making her confession by statements made by the detectives concerning her daughters and suggestions that she would not see them again if she did not confess. Although it may have been somewhat coercive for the detectives to suggest that Petitioner would not see her children again if she did not confess or if she was convicted of first-degree murder, in light of the fact that petitioner was advised of her *Miranda* rights, was of sufficient intelligence, was not injured or ill, and did not allege that she was deprived of food, water, or sleep, under the totality of the circumstances of this case, it was reasonable for the Michigan Court of Appeals to conclude that Petitioner's confession was voluntary. *See McCalvin,* 444 F. 3d at 720.

Petitioner further claims that her confession was involuntary because the detectives, during the early stages of the interrogation, falsely informed her that her husband had implicated her in the murder. Police trickery alone, however, will not invalidate an otherwise voluntary statement. *See Frazier v. Cupp*, 394 U.S. 731, 737-39 (1969) (interrogator's misrepresentation that co-suspect had already confessed did not render suspect's confession coerced); *U.S. v. Adkins,* 169 Fed. Appx. 961, 968 (6th Cir. 2006) (Federal Bureau of Investigations agents' psychological tactic of telling wife that her husband had already confessed to receiving and possessing child pornography was not coercive police activity that rendered wife's confession involuntary); *Ledbetter v. Edwards*, 35 F.

3d 1062, 1066-70 (6th Cir. 1994) (police officer's false statements that police had matched defendant's fingerprints to prints in victim's van and that two witnesses had identified defendant did not make confession involuntary); *see also Terry v. Bock,* 208 F. Supp. 2d 780, 790 (E.D. Mich. 2002) (determination that defendant voluntarily waived his *Miranda* rights prior to making his second statement was not unreasonable, even if officer misrepresented to petitioner that co-defendant had made a statement against defendant).   Moreover, to the extent that the police confronted Petitioner with any incriminating evidence which actually implicated her in this crime, such tactics would not be unduly coercive, because "officers routinely confront suspects with incriminating evidence." *See e.g. Parsad v. Greiner,* 337 F. 3d 175, 185 (2nd Cir. 2003).

Petitioner next claims that her confession was involuntary because it was based upon a false promise of leniency on the part of the detectives when they told her that they would "put in a good word for her" with the prosecutor.   A police officer's "promises to inform a prosecutor of defendant's cooperation do not, *ipso facto*, render a confession coerced[,]." *U.S. v. Stokes,* 631 F. 3d 802, 808 (6th Cir. 2011) (internal quotation omitted); *Walendzinski v. Renico*, 354 F. Supp. 2d 752, 760-61 (E.D. Mich. 2005) (a police officer's promise to bring a defendant's cooperation to the attention of the prosecutor do not render a confession involuntary).

Petitioner next contends that the police engaged in coercive tactics by urging her to tell the truth.   The detectives' urging Petitioner to tell the truth did not render Petitioner's statements involuntary. *See Ceja v. Stewart,* 97 F. 3d 1246, 1253 (9th Cir. 1996).

Even if there were some circumstances surrounding Petitioner's interrogation which may have been somewhat coercive, under the deference required by the AEDPA, and given the factors supporting a finding that Petitioner's confession was voluntary, the decision of the Michigan Court

19

of Appeals in finding Petitioner's confession to have been voluntary was a reasonable application of federal law. *See McCalvin,* 444 F. 3d at 720.  Petitioner is not entitled to habeas relief on her second claim.

### IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to Petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because she has failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002).

### V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

20

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.


S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  January 23, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on
January 23, 2013, by electronic and/or ordinary mail.

S/Jennifer Hernandez McCoy
Case Manager